UNITED STATES DISTRICT COURT
for the
Northern District of Texas

**FILED**
June 10, 2021
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
)
2706 Peabody Avenue, Dallas, Texas 75215, Freestanding Structure Behind Residence )

Case No. 3:21-MJ-514-BH

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

located in the **Northern** District of **TEXAS**, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841; 21 U.S.C. § 843 21 U.S.C. § 846; 18 USC § 924(c) | Possession with Intent to Distribute a Controlled Substance; Use of a Telecommunication Facility to Facilitate a Drug Felony; Conspiracy to Possess with Intent to Distribute a Controlled Substance; Use of a Firearm in Furtherance of a Drug Trafficking Crime |

The application is based on these facts:

See attached affidavit of Task Force Officer Michael Scott Reuler

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Michael Reuler, TFO, FBI
*Printed name and title*

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 41(d)(3).

Date: 06/10/2021

*Judge's signature*

City and state: Dallas, Texas

Irma C. Ramirez, U.S. MAG. JUDGE
*Printed name and title*

**Affidavit in Support of Search Warrant**

I, Michael S. Reuler, having been duly sworn, do depose and state as follows:

**PREFACE**

1. The following affidavit is furnished to support an application for search warrant for:

   - 2706 Peabody Avenue, Dallas, Texas, 75215, Freestanding Structure Behind Residence, (Location A)

2. Location A is a single-family residence located on Peabody Avenue between South Malcolm X Boulevard and Myrtle Street in the Northern District of Texas specifically the South Dallas, Texas area. Location A is more fully described in Attachment "A." Currently, law enforcement has identified the freestanding structure behind Location A as the primary residence for Denise Alexander who sells illegal narcotics in the captioned area. The geographical area where Location A is based, is a high crime and drug area with violence associated with Dallas based criminal street gangs. Based on the captioned investigation described herein, law enforcement believes Location A is being used to stash cocaine base (crack cocaine), firearms, and the proceeds derived from the sales of cocaine base (crack cocaine).

3. I believe that probable cause exists that Location A will contain evidence, fruits, and/or instrumentalities of violations of federal law, specifically 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), 21 U.S.C. § 843 (Use of a

**Affidavit in Support of Search Warrants – Page 1**

Telecommunication Facility to Facilitate a Drug Felony), 21 U.S.C. § 846 (Conspiracy to Possess with the Intent to Distribute a Controlled Substance), 18 U.S.C. § 924(c) (Use of a Firearm in Furtherance of a Drug Trafficking Crime), (collectively the "Target Offenses") will be found.

## Background on Affiant

4.  I have been employed by the City of Dallas as a Police Officer for approximately twenty-one years. I have been a Gang Detective since 2006 and have been a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) since 2012. I have participated in numerous investigations of violent crime related to criminal street gangs, investigations of unlawful narcotics distribution, investigations involving firearms used in conjunction with violent criminal offenses and illegal drug distributions and have conducted or participated in physical and electronic surveillances, the execution of search warrants, debriefing of informants, and the review of taped conversations. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are transported, stored, distributed, and the methods of payments for such drugs. I am also familiar with the methods by which narcotics traffickers communicate and the code words commonly used by narcotics traffickers.

5.  I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States who is authorized by law to conduct investigations of, and make arrests, for offenses enumerated in 18 U.S.C. § 2516.

**Affidavit in Support of Search Warrants – Page 2**

## Background on Investigations Involving Illegal Narcotics

6. Based on my training and experience, and participation is this investigation and other investigations involving drug trafficking organizations, I know:

a. Individuals who deal in illegal controlled substances routinely conceal in their residences, vehicles, out buildings, places of operation and places of business, caches of illegal controlled substances, large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of illegal controlled substance transactions relating to obtaining, transferring, secreting or spending large sums of money made from engaging in illegal controlled substances activities.

b. It is common for individuals who deal in illegal controlled substances to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, out buildings, places of operation, and places of business and/or motor vehicles for ready access and to conceal such items from law enforcement authorities.

c. Individuals who deal in illegal controlled substances maintain books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the transportation, ordering, sale, and distribution of illegal controlled substances. These individuals commonly "front" (provide illegal controlled substances on consignment) illegal controlled substances to their clients and thus maintain some type of records concerning monies owed. The aforementioned books, records, receipts, notes, ledgers, etc. are

**Affidavit in Support of Search Warrants – Page 3**

maintained where the dealer in illegal controlled substances has ready access to them including but not limited to on his/her person, in his/her motor vehicles, in his/her place of business or place of residence. These individuals commonly utilize ledger books and computer systems to maintain these records. A long-standing pattern of criminal activity can support a finding of probable cause to search for these items even if fairly long periods of time have lapsed between the criminal acts and the issuance of the warrant.

      d.    Individuals who deal in illegal controlled substances profit from the sale of illegal controlled substances and they attempt to legitimize these profits. To accomplish these goals, these individuals utilize false and fictitious business records, foreign and domestic banks, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate shell corporations and business fronts.

      e.    Individuals who deal in illegal controlled substances commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses and/or telephone numbers for their associates in their illegal organization. In addition, these individuals utilize telephone systems to maintain contact with their associates in their illegal business. These telephones are often in the primary location of the individual's illegal businesses, be it residence, place of business, or motor vehicles.

      f.    Individuals who deal in illegal controlled substances take, or cause to be taken, photographs of themselves, their associates, their property and their illegal product. These individuals usually maintain these photographs in their possession or at their residences or places of operation.

**Affidavit in Support of Search Warrants – Page 4**

g. Individuals who deal in illegal controlled substances usually keep paraphernalia for packaging, cutting, weighing, manufacturing and distributing of illegal controlled substances. This paraphernalia includes laboratory equipment and glassware, chemical formulas, manufacturing notes, scales, plastic bags and cutting agents.

h. Individuals who deal in illegal controlled substances or individuals that reap substantial profits from providing the raw materials and equipment utilized in illegal conduct, commonly violate federal income tax laws by attempting to conceal the true amount and source of their income from the government.

i. Individuals who deal in the illegal distribution of controlled substances commonly utilize cellular telephones in order to maintain contact with their clients and suppliers. These individuals utilize the cellular telephones and caller identification Tracking Devices in an attempt to prevent Law Enforcement agents from discovering their true location at the time the illegal drug transactions are occurring. Often these individuals utilize these Tracking Devices to maintain or store the telephone numbers and other information about their co-conspirators where they will have easy access to them.

j. Firearms are tools of the drug dealer's trade. I have been involved in several search warrants involving illegal narcotics distributors and can state that on almost every occasion the suspects were found to be in possession of firearms. I know that these firearms are used by drug traffickers to protect their illegal enterprises.

**Affidavit in Support of Search Warrants – Page 5**

k.  Drug traffickers typically utilize counter-surveillance equipment to warn them of possible intruders, including law enforcement. I have personally observed such equipment present at drug traffickers' residences on numerous occasions.

7.  Through my training and experience, I know that illegal drug trafficking is frequently a continuing activity over months and even years. Illegal drug traffickers typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legitimate commodity would purchase stock for sale, and similarly such drug traffickers will have an "inventory" which will fluctuate in size depending upon the demand for the product. I expect the drug trafficker to keep records of his illegal activities for a period exceeding beyond the time during which he/she actually possess illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example he might still be owed money, or might owe someone else money. Drug traffickers frequently use third parties to transport shipments of illegal drugs and cash proceeds from the sale of illegal drugs. These third parties use a variety of methods to transport shipments of illegal drugs and cash, including automobiles.

## Background of Investigation

8.  The facts comprising the basis for this affidavit are personally known by the Affiant or have been relayed to the Affiant by FBI Special Agents and other law enforcement officers. I have obtained the following information through personal observations, reviewing law enforcement reports, interviews with Confidential Human Sources (CHS's), Cooperating

**Affidavit in Support of Search Warrants – Page 6**

Defendants (CD's), and through information provided to me, directly or indirectly, by other law enforcement officers, and through discussions with other agents and officers who are familiar with this investigation. I have participated with other agents and officers while conducting physical surveillance, and background investigations, including criminal histories, pertaining to the investigation for the offenses described herein. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are necessary to establish probable cause to believe that violations of the criminal statutes noted herein have occurred.

9. I state that based upon my training and experience, and the facts set forth herein, there is probable cause to believe that the evidence sought to be located, as fully described in Attachment "B," will be located at Location A as described in Attachment "A" herein, including all storage places, safes, garages, structures, and any automobiles which may be found within the curtilage of the suspected premises. Attachments "A" and "B" are attached hereto and incorporated by reference.

10. In August 2019, the Federal Bureau of Investigation and Dallas Police Department Gang Unit initiated an investigation focused on members of the criminal street gang "Park Row Posse." "Park Row Posse" is a Dallas based local neighborhood criminal street gang that operates in the south Dallas, Texas area; specifically, the area around Grand City Grocery, 3000 Al Lipscomb Way, Dallas, Texas. The criminal street gang "Park Row Posse" was the subject of a previous FBI investigation in 2014 involving the gang's illegal

**Affidavit in Support of Search Warrants – Page 7**

drug sales and acts of violent crime involving firearms. The current investigation revealed that illegal drug sales and use of firearms in conjunction with illegal drug sales are still occurring in captioned area.

11. Information obtained from Confidential Human Sources, Cooperating Defendants, Dallas Police Department reports, and reports from the previous FBI investigation involving "Park Row Posse" built the basis for the captioned investigation. Upon initiation of this investigation, law enforcement identified key individuals who are members of the "Park Row Posse" criminal street gang, and other criminal street gangs operating in the surrounding area who are involved in illegal drug sales.

12. During this investigation, law enforcement used numerous techniques to investigate subjects of the investigation and specific locations used by these subjects for illegal narcotics activity. Some of the techniques used and currently in use are law enforcement directed controlled drug purchases utilizing Confidential Human Sources and Undercover Employees of the Dallas Police Department Narcotics Division, Pen Register/Trap and Trace orders, Cellular GPS locating of telephones utilized by certain Targets of the investigation, State of Texas Narcotics Search Warrant executions at locations directly or indirectly involved with this investigation, physical surveillance, electronic surveillance (i.e. Pole Cameras), and Court authorized interception of wire and electronic communications from telephones utilized by specific subjects of this investigation.

## Probable Cause for Location A

13. On June 10, 2021, Special Agents from the FBI executed a Federal Arrest Warrant for Denise Alexander at Location A. Denise Alexander was indicted by a Federal Grand Jury convened in the Northern District of Texas for Drug Conspiracy, Possession, and Distribution violations which resulted in an arrest warrant being issued for Alexander's arrest on June 9, 2021. Law enforcement through this investigation identified Location A as Alexander's primary residence.

14. As Special Agents of the FBI were at Location A executing the Federal Arrest Warrant for Alexander, Alexander was found in the rear freestanding structure behind the residence at 2706 Peabody Avenue, Dallas, Texas, which is Location A. As Alexander was being placed into custody, Special Agents of the FBI observed in plain view suspected crack cocaine, digital scales, and two firearms inside the structure where Alexander was located and arrested. Special Agents also contacted Cornelius Marshall, Jr. who was inside Location A and told Agents he resided at Location A with Alexander. A review of Marshall's criminal history shows he is a convicted felon.

15. During the captioned investigation, law enforcement has made controlled drug purchases from Alexander at 2607 Peabody Avenue.

16. Based upon the foregoing, as well as other aspects of the investigation, I believe it is clear, Location A, the freestanding structure behind the main residence, is being used by Denise Alexander to aid in the distribution, storing, and maintaining illegal narcotics, and the proceeds derived from the sale of illegal narcotics.

**Affidavit in Support of Search Warrants – Page 9**

17. Further, I believe that the items listed in Attachment "B" will be located at Location A, more fully described in Attachment "A."

## CONCLUSION

18. This investigation has shown that Location A, the freestanding structure behind the main residence is being used to distribute and store amounts of cocaine base (crack cocaine), firearms, and is controlled and operated by Denise Alexander. Furthermore, Location A is a repository for illegal narcotics and the proceeds from the sales of illegal narcotics.

_____
Michael S. Reuler
Task Force Officer, FBI
Dallas, Texas

Subscribed and sworn to before me on this 10 th day of June, 2021.
Agent Sworn and signature confirmed via reliable electronic means pursuant to Fed. R. Crim P. 41(d)(3).

_____
IRMA C. RAMIREZ
United States Magistrate Judge
Northern District of Texas

# ATTACHMENT A

## Location A:  2706 Peabody Avenue, Dallas, Texas 75215, Freestanding Structure Behind Residence

Location A  is a small freestanding structure located behind 2706 Peabody Avenue, Dallas, Texas on Peabody Avenue, between Malcolm X Boulevard and Myrtle Street in the South Dallas Texas area. Location A is comprised of white siding with black trim.  The rear structure is comprised of white wide siding with white trim.  There are no numbers posted on the rear structure but the num are clearly posted on the main residence above the front right window. The front door to Location A is covered with a metal rod iron exterior door.  The photographs provided below obtained from Google Maps and FBI personnel on-scene are an accurate representation of Location A, and where Location A is located.





**Attachment A – Page 1**

## ATTACHMENT B
## Description of Items to be Seized

The items to be seized during these search warrants include the following:

1. All records evidencing violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), 21 U.S.C. § 843 (Use of a Telecommunication Facility to Facilitate a Drug Felony), 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), 18 U.S.C. § 924(c) (Use of a Firearm in Furtherance of a Drug Trafficking Crime).

2. All records relating to the possession of, transportation, sale, manufacture, and concealment of narcotic drug sales and disposition of proceeds from narcotic drug sales.

3. All mail and other records indicating residency at the search location(s), and all documents that bear the names of individuals as referenced in the affidavit or that are located on/in the search location(s) premises at the time of the execution of the warrant.

4. All currency, financial instruments, precious metals, jewelry, and/or other items of value derived from profits and proceeds of narcotic sales, and evidence of financial transactions related to obtaining, transferring, laundering, secreting, or spending large sums of money made from engaging in narcotic drug sales.

5. All cellular telephones used in the commission of the drug trafficking, and cellular telephones, telephone bills, calling cards, telephone and address books, papers, or electronic devices which reflect names, addresses and/or telephone numbers of individuals associated in dealing in illegal controlled substances.

6. All photographs of individuals, property, and illegal controlled substances.

7. All drug paraphernalia, including equipment or material of any kind used or designed to be used in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, inhaling, or otherwise introducing into the human body a controlled substance.

8. All equipment, materials, chemicals, and all substances used in packaging, cutting, weighing, processing, cooking, heating, and distributing controlled substances.

9. All controlled substances.

10. All firearms and ammunition.

11. All camera security system equipment and recordings.

12. All records related to bank accounts or other monetary instruments where the proceeds of illegal activities might be stored or maintained.

13. All records related to the identity of co-conspirators.

14. All computer hardware used to commit, further, or facilitate any violation of the offenses cited above, including any and all electronic storage devices or electronic equipment capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data.  Included within the definition of computer hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical and compact disk storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, cell phones, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

15. For any computer hardware seized pursuant to this warrant, all records evidencing, memorializing, or identifying the individual(s) who owned, used, possessed, accessed, or controlled the hardware device at the time the events described in the affidavit above, including but not limited to any logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail contacts, communications and correspondence (including but not limited to e-mail, chat, and instant messaging), and photographs.

**Attachment B – Page 2**

16. For any computer hardware seized pursuant to this warrant, all records evidencing, memorializing, or identifying any electronic storage device or equipment that was attached or connected by any means or manner to the hardware device.

17. All computer software used to commit, further, or facilitate any violation of the offenses cited above, including any and all information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components.  Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

18. All computer software designed, intended, or that can be used to delete, eliminate, encrypt, hide, or obscure any records on any computer hardware device or equipment.

19. All computer-related documentation, meaning any written, recorded, printed, or electronically-stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

20. All passwords and data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records.  Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form.

The term record, as used above, means any document, information, data, or material, including that used to facilitate interstate communications, in whatever form and by whatever means such document, information, data, or material, its drafts or modifications, may have been created or stored, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides,

**Attachment B – Page 3**

negative, video tapes, motion pictures or photocopies); any mechanical form (such as photographic records, printing or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact disks); or any data or information on an electronic or magnetic storage device (such as floppy diskettes, hard disks, CD-ROMs, optical disks, printer buffers, sort cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device, including any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), of any computer or computer system.  The form such information might take includes, but is not limited to, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, video cassettes, and other media capable of storing magnetic or optical coding.

**Attachment B – Page 4**